IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION
———————————————————

| | | |
|---|---|---|
| KENDRIX T. RAY, | § | |
| Petitioner, | § | |
| | § | 3:11-CV-2866-P |
| v. | § | 3:06-CR-350-P (11)) |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| Respondent. | § | |

## RESPONSE TO MOTION UNDER 28 U.S.C. § 2255

Respectfully submitted,

SARAH R. SALDAÑA
UNITED STATES ATTORNEY

 s/ Frank L. Gatto
FRANK L. GATTO
Assistant United States Attorney
Texas Bar No. 24062396
801 Cherry Street, Suite 1700
Fort Worth, Texas 76102
Telephone: 817.252.5213
Facsimile: 817.252.5514
E-mail: Frank.Gatto@usdoj.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

RESPONSE TO MOTION UNDER 28 U.S.C. § 2255 . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A. Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    B. Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III. ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    A. Guilty Plea . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    B. Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Beckham v. Wainwright*, 639 F.2d 262 (5th Cir.  1981) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Blackledge v. Allison*, 431 U.S. 63 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*Bradshaw v. Stumpf*, 545 U.S. 175 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Brady v. United States*, 397 U.S. 742 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Cullen v. Pinholster*, 131 S. Ct. 1388 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Daniel v. Cockrell*, 283 F.3d 697 (5th Cir.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Deville v. Whitley*, 21 F.3d 654 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Harmason v. Smith*, 888 F.2d 1527 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Harrington v. Richter*, 131 S. Ct. 770 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Massaro v. United States*, 538 U.S. 500 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Miller v. Johnson*, 200 F.3d 274 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Padilla v. Kentucky*, 130 S. Ct. 1473 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Premo v. Moore*, 131 S. Ct. 733 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Roe v. Flores-Ortega*, 528 U.S. 470 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Strickland v. Washington*, 466 U.S. 668 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*United States v. Abreo*, 30 F.3d 29 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

*United States v. Addonizio*, 442 U.S. 178 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Capua*, 656 F.2d 1033 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*United States v. Cervantes*, 132 F.3d 1106 (5th Cir. 1998) . . . . . . . . . . . . . . . . . 10, 11, 13

*United States v. Cothran*, 302 F.3d 279 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . 10, 13

*United States v. Frady*, 456 U.S. 152 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Gracia*, 983 F.2d 625 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Grammas*, 376 F.3d 433 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . 13, 14

*United States v. Handy*, 182 Fed. Appx. 341 (5th Cir. 2006) . . . . . . . . . . . . . . . . . 13, 14

*United States v. Herrera*, 412 F.3d 577 (5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Hughes*, 635 F.2d 449 (5th Cir. Unit B 1981) . . . . . . . . . . . . . . . . . . . 7

*United States v. Jolly*, 252 Fed. Appx. 669 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Palmer*, 45 F.3d 484 (5th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Placente*, 81 F.3d 555 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*United States v. Sanders*, 157 F.3d 302 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Stewart*, 207 F.3d 750 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Stumpf*, 827 F.2d 1027 (5th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . 10

**Federal Statutes**

21 U.S.C. § 841(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

21 U.S.C. § 841 (b)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

21 U.S.C. § 846 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 2255 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

iv

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

_____

| | | |
|---|---|---|
| KENDRIX T. RAY, | § | |
|       Petitioner, | § | |
| | § | 3:11-CV-2866-P |
| v. | § | 3:06-CR-350-P (11)) |
| | § | |
| UNITED STATES OF AMERICA, | § | |
|       Respondent. | § | |

## <u>RESPONSE TO MOTION UNDER 28 U.S.C. § 2255</u>

The government opposes Kendrix Ray's ("Ray") section 2255 motion. His claim that his plea was involuntary and unknowing due to alleged deficient advice from his attorney, R. Kelly Pace ("Pace"), regarding his sentencing exposure is contradicted by Ray's solemn declarations to this Court at his rearraignment. Ray's claim that Pace failed to file a notice of appeal fails because Ray never instructed Pace to appeal his case.

## I.     BACKGROUND

### A.     Statement of the Case

On December 1, 2010, Ray was sentenced to 180 months in prison and a five-year term of supervised release after he pled guilty, in accordance with a plea agreement containing an appellate-rights waiver, to conspiring to traffic in five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A). He did not appeal, but timely filed his first section 2255 motion on October 25, 2011.

**Response to Motion Under  28 U.S.C. § 2255 - Page 1**

**B.** **Facts**[1]

Between October 2005 and November 2007, Ray conspired with Jimoine Williams ("Williams"), John Toney ("Toney"), Latarra Byrd ("Byrd"), and others to traffic in more than five kilograms of cocaine. Toney was the leader of the group and was responsible for trafficking in kilograms of cocaine and pounds of marijuana throughout the United States. During the course of the Drug Enforcement Administration's investigation of this group, they intercepted numerous phone calls of the conspirators discussing drug transactions, and the DEA's surveillance of the conspirators led to the seizure of 25 kilograms of cocaine.

The investigation began when a confidential source ("CS") informed DEA agents that the CS had been asked to install a hidden compartment in a Ford pickup truck that the CS believed was going to be used to transport drugs. When DEA agents investigated the title of the Ford truck, they leaned Toney owned it. DEA's investigative database showed Toney was the target in five different DEA investigations.

In early March 2006, Williams had Byrd bought two Nextel cellular phones and car insurance for a white 2001 Chevrolet Monte Carlo that was registered to Toney. Williams brought the Monte Carlo to the CS to have a secret compartment installed to conceal drugs. The CS installed the compartment at the direction of DEA agents and returned the car to Williams.

---

[1] Unless expressly cited from a different source, the facts are from the presentence report and factual résumé. Any citation to document number ("Doc. #") refers to the docket entry in the underlying criminal case.

**Response to Motion Under  28 U.S.C. § 2255 - Page 2**

Williams and Ray then negotiated the purchase of four kilograms of cocaine from Toney.  They paid Toney $15,000 for one kilogram and Toney "fronted" them the additional three kilograms, which means Williams and Ray would not pay for the additional three kilograms of cocaine until after they sold it.

Williams and Ray then met with Byrd at a prearranged location in Dallas, Texas.  There, Williams and Ray gave Byrd the Monte Carlo and told her that the cocaine was in the hidden compartment.  Each took a Nextel cellular phone, and Bryd drove the Monte Carlo to Tyler, Texas, while Williams and Ray followed her.  The three communicated using the Nextel cellular phones.

Aware of this transaction, DEA agents followed them and had a Texas State Trooper stop Byrd in Canton, Texas, as she was traveling eastbound on Interstate 20.  She consented to a search of the car, and officers discovered the four kilograms of cocaine in the secret compartment.

In October 2006, a cooperating defendant arranged for the sale and transportation of 25 kilograms of cocaine from Houston, Texas, to Dallas.  Prior to transporting the cocaine, DEA agents switched it out with another substance simulating cocaine.  The simulated cocaine was hidden in a tractor-trailer that drove from Huntsville, Texas, towards Dallas.  Sheriff's deputies stopped the trailer in Ellis County, Texas, where DEA agents discovered a duffel bag containing the simulated cocaine beneath the sleeper mattress.  A couple days after the seizure, DEA agents intercepted a call between Williams and Toney discussing the seizure of the 25 kilograms of cocaine.

At the end of November 2007, Williams was arrested during a traffic stop conducted by Dallas police.  Ray, who was the passenger, escaped on foot.

Law enforcement caught up with Ray at the end of January 2009, when DEA agents learned Ray was going to travel from Dallas to Tyler.  Watching the residence of Ray's parents, agents followed Ray as he drove toward Tyler.  They had officers conduct a traffic stop, but Ray initially tried to flee in his car.  When that proved unsuccessful, he jumped out and fled on foot.  But officers found him hiding under a mobile home and arrested him.  On Ray, officers discovered $4,990.

Debriefings with three confidential sources revealed Ray had an extensive drug-trafficking history, detailing his trafficking in kilograms of cocaine.

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a prisoner may move the convicting court to vacate, set aside, or correct his conviction or sentence.  It provides four grounds: "(1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is otherwise subject to collateral attack."  *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996) (internal marks omitted).

"It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment."  *United States v. Addonizio*, 442 U.S. 178, 184, (1979).  "Section 2255 does not offer recourse to all who suffer trial errors."  *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981).

And it "may not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165

(1982).  After conviction and the exhaustion or waiver of all appeals, the Court is

"entitled to presume" that the prisoner "stands fairly and finally convicted." *Id.* at 164.

Instead, section 2255 is "reserved for transgressions of constitutional rights and for

that narrow compass of other injury that could not have been raised on direct appeal and,

would, if condoned, result in a complete miscarriage of justice." *Capua*, 656 F.2d at

1037.  In other words, the "scope of relief under § 2255 is consistent with that of the writ

of habeas corpus." *Placente*, 81 F.3d at 558.

When a prisoner has pled guilty, he will successfully challenge his convictions

under section 2255 only "if: (1) the plea was not entered voluntarily or intelligently, . . .

or (2) the [prisoner] establishes that he is actually innocent of the underlying crime."

*United States v. Sanders*, 157 F.3d 302, 305 (5th Cir. 1998).  The prisoner bears a heavy

burden to convince the court that his guilty plea was involuntary after testifying to its

voluntariness in court.  *Deville v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994).  This is

because solemn declarations in open court carry a strong presumption of verity.  *United*

*States v. Palmer*, 45 F.3d 484, 491 (5th Cir. 2006).

Claims that counsel was ineffective is a constitutional transgression that can be

raised under section 2255.  *Massaro v. United States*, 538 U.S. 500, 504 (2003).

Ineffective-assistance claims are governed by the now-familiar two-prong test established

in *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  First, the prisoner must prove his

counsel's performance was deficient by identifying specific acts or omissions that were

not the result of reasonable professional judgment. *Strickland*, 466 U.S. at 690.  Second, the prisoner must prove that his counsel's deficient performance resulted in prejudice by showing counsel's errors "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (internal marks omitted).  Put another way, the prisoner must prove that but for counsel's errors, "there is a reasonable probability that" the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 693-94. "That requires a substantial, not just conceivable, likelihood of a different result." *Pinholster*, 131 S. Ct. at 1403.  Simply making "conclusory allegations" of deficient performance and prejudice is insufficient to meet the *Strickland* test.  *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000).

"Recognizing the temptation for a defendant to second-guess counsel's assistance after conviction or adverse sentence," the Supreme Court recently reemphasized "that counsel should be strongly presumed to have rendered adequate assistance and made all significant decisions in exercise of reasonable professional judgment." *Pinholster*, 131 S. Ct. at 1403 (internal marks omitted).  The Court also cautioned that ineffective-assistance claims "can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial . . . ." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (internal marks omitted).  Thus, the Court has admonished that "the *Strickland* standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve." *Id.*  It reminded that in applying

*Strickland*, "the standard for judging counsel's representation is a most deferential one," and a court must be mindful that "the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." *Id.*  Importantly, the Court reaffirmed that "the purpose of the effective assistance guarantee of the Sixth Amendment is not to improve the quality of legal representation . . . [but] simply to ensure that criminal defendants receive a fair trial." *Pinholster*, 131 S. Ct. at 1403 (brackets in original, internal marks omitted).  And it is the defendant's burden to prove his counsel was deficient; it is not the government's burden to prove his counsel was competent.  *Premo v. Moore*, 131 S. Ct. 733, 739 (2011) (internal marks omitted).

Thus, "[s]urmounting *Strickland's* high bar is never an easy task."  *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010).  The claim fails if the prisoner does not satisfy either the deficient-performance or prejudice prongs.  *United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000).  And a court need not address both components if there is an insufficient showing on one.  *Id.*

A motion under section 2255 does not automatically require a hearing.  *United States v. Hughes*, 635 F.2d 449, 451 (5th Cir. Unit B 1981); *see also* Rule 8 of the Rules Governing Section 2255 Proceedings.  "When the files and records of a case make manifest the lack of merit of a section 2255 claim, the trial court is not required to hold an evidentiary hearing."  *Hughes*, 635 F.2d at 451.

**Response to Motion Under  28 U.S.C. § 2255 - Page 7**

### III.   ANALYSIS

Dissatisfied with the outcome of his case, Ray—naturally—blames his attorney, Pace.  He presents two claims.  First, he contends Pace coerced him to plead guilty and misinformed him as to his punitive exposure.  Second, he faults Pace for failing to file a notice of appeal despite his alleged instruction to do so.

### A.   Guilty Plea

Ray accuses Pace of being constitutionally defective "in the plea context for coercing [him] into entering a plea that rested on an [allegedly] erroneous estimation of sentence exposure."  (Memo. at 10.)  Ray claims that Pace gave him "the prognostication that [Ray] faced a sentencing range of 130-to-162 months."  (*Id.*)  He alleges that Pace also informed him that "the Court could depart downward to 120 months," but Ray does concede that Pace also allegedly cautioned him that "there was no guarantee."  (*Id.*)  In his affidavit, Ray alleges that "Pace advised me that if I plead guilty, I would face a sentence of 120-to-130 months."  (Aff. at ¶ 3.)  Also in his affidavit, Ray states that in April 2009 he allegedly received a letter from Pace "informing [Ray] of relevant conduct which would recommend a sentence of 151-to-188 months."  (*Id.* at ¶ 4.)  But Ray claims, "Upon me asking [Pace] of the 151-to-188 estimation, [Pace allegedly] replied 'not to worry, you will be sentenced in the range of 120-to-130 months' if he pled guilty."  (*Id.* at ¶¶ 3–5.)  Ray asseverates that "it was [Pace's] erroneous estimation of the sentence to be expected that led [him] to acquiesced with the coercing of pleading guilty [sic]."  (Memo. at 12.)  Had he known that Pace's alleged "promise of 120-to-130 months" was

erroneous, Ray contends "he would not have pleaded guilty and would have insisted on going to trial." (*Id.* at 17–18.)

It is well settled that a guilty plea is valid only if entered voluntarily, knowingly, and intelligently, "with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183, 125 S.Ct. 2398, 2405, 162 L.Ed.2d 143 (2005), citing *Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970). The Fifth Circuit has identified three core concerns in a guilty plea proceeding: (1) the absence of coercion; (2) a full understanding of the charges; and (3) a realistic appreciation of the consequences of the plea. *See United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993). Compliance with the admonishments required under Rule 11 of the Federal Rules of Criminal Procedure provides "prophylactic protection for the constitutional rights involved in the entry of guilty pleas." *Id*. at 627.

Even so, a guilty plea will not be vacated simply because counsel made an erroneous estimate of the sentence length or an incorrect prediction that a defendant would receive a lesser sentence. *See Beckham v. Wainwright*, 639 F.2d 262, 265 (5th Cir. 1981). As the Fifth Circuit explained:

> A guilty plea is not rendered involuntary by the defendant's mere subjective understanding that he would receive a lesser sentence. In other words, if the defendant's expectation of a lesser sentence did not result from a promise or guarantee by the court, the prosecutor, or defense counsel, the guilty plea stands.

> Likewise, a guilty plea is not rendered involuntary because the defendant's misunderstanding was based on defense counsel's inaccurate prediction that a lesser sentence would be imposed.

*Daniel v. Cockrell*, 283 F.3d 697, 703 (5th Cir.) (internal marks omitted); *see also United States v. Stumpf*, 827 F.2d 1027, 1030 (5th Cir. 1987) ("a defendant's reliance on his attorney's erroneous prediction of leniency is not sufficient to render a guilty plea involuntary").  Only when counsel actually promises that a lesser sentence will be imposed, as opposed to an erroneous prediction of leniency, will a guilty plea be held to be involuntary.  *See, e.g. Harmason v. Smith*, 888 F.2d 1527, 1532 (5th Cir. 1989); *Stumpf*, 827 F.2d at 1030.

Indeed, to obtain "relief on the basis of alleged promises" that are "inconsistent with representations [a defendant] made in open court when entering [his] guilty plea," a defendant is required to prove "(1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise."  *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998).  In other words, when a defendant alleges his attorney promised him a lesser sentence, he must produce "independent indica of the likely merit of [his] allegations . . . ."  *Id.*  This is because, ordinarily, a defendant "will not be heard to refute [his] testimony given at a plea hearing while under oath," *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998), since "reviewing courts give great weight to the defendant's statements at the plea colloquy" *United States v. Cothran*, 302 F.3d 279, 283-84 (5th Cir. 2002).  *Accord, Blackledge v. Allison*, 431 U.S. 63, 73 (1977) ("Solemn declarations in

open court carry a strong presumption of verity."). And a signed, unambiguous plea agreement submitted contemporaneously with a guilty plea during a rearraignment colloquy "is accorded great evidentiary weight" when determining whether a guilty plea or the decision to enter into a plea agreement is voluntary and knowing. *United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994).

Here, the record is clear that Ray entered a knowing and voluntary plea. He was correctly admonished as to (1) his constitutional rights; (2) his potential sentence; (3) the role of the sentencing guidelines and the judge in determining a sentence; (4) the consequences of waiving his rights and pleading guilty; (5) the terms of his plea agreement; and (6) the nature of the charge he intended to plead guilty to and the elements to that charge. (Plea Agreement; Factual Résumé; Rearraignment Tr. at 2–14.) Ray told this Court under oath the he understood all of this Court's admonishments, that his decision to plead guilty was freely and voluntarily made, and that the facts in the factual résumé he sponsored to this Court in support of his guilty plea were true and correct. (*Id.*)

More specifically, in his plea agreement, Ray agreed to plead guilty to conspiring to traffic in kilograms of cocaine, and he stipulated that his guilty plea "is freely and voluntarily made and is not the result of force or threats, or promises apart from those set forth in this plea agreement." (Plea Agreement at ¶ 9.) Ray also stipulated, "There have been no guarantees or promises from anyone as to what sentence the Court will impose."

(*Id.*)  Ray's plea agreement recited his correct punitive exposure: imprisonment for not

less than 10 years nor more than life.  (*Id.* at ¶ 3.)

Regarding Pace, Ray stipulated in his plea agreement that he had "reviewed the

guidelines with" Pace, but that he understood that "no one can predict with certainty the

outcome of the Court's consideration of the guidelines in this case."  (*Id.* at ¶ 4.)  Ray

stipulated that he understood that he would "not be allowed to withdraw his [guilty] plea

if his sentence is higher than expected," and that he "fully" understood that "the actual

sentence imposed . . . is solely in the Court's discretion."  (*Id.*)  He further stipulated that

he had "thoroughly reviewed all legal and factual aspects of [his] case with [Pace]," and

that he was "fully satisfied with [Pace's] legal representation," that he had "received from

[Pace] explanations satisfactory to him concerning each paragraph of [his] plea

agreement, each of his rights affected by [his] plea agreement, and the alternatives

available to him other than entering into this agreement."  (*Id.* at 11.)  And Ray stipulated

that because "he concedes that he is guilty, and after conferring with [Pace], [Ray] has

concluded that it is in his best interest to enter into this plea agreement and all of its

terms, rather than proceed to trial in this case."  (*Id.*)

Ray reiterated these same stipulations under oath to this Court at his

rearraignment.  (Rearraignment Tr. at 2–14.)  He told this Court he understood that even

though he reviewed the guidelines with Pace, it is not known what the guideline range

will be until after a presentence report is prepared and this Court holds a sentencing

hearing.  (*Id.* at 9.)  He told this Court he understood that if his guideline range or

**Response to Motion Under  28 U.S.C. § 2255 - Page 12**

sentence was higher than expected, he would not be permitted to withdraw from his guilty

plea.  (*Id.*)  And Ray assured this Court that a part from his plea agreement, no one

promised him "any kind of benefit in order to get [him] to plead guilty."  (*Id.* at 13.)

Ray's solemn representations to this Court are accorded great evidentiary weight

and constitute a formidable barrier that his self-serving, unsubstantiated, and after-the-fact

revision fails to break through.  *Blackledge*, 431 U.S. at 73; *Cothran*, 302 F.3d at 283-84;

*Abreo*, 30 F.3d at 32.  Indeed, Ray fails to produce any "independent indica of the likely

merit of [his] allegations."  *Cervantes*, 132 F.3d at 1110.

Ray's reliance on *United States v. Handy*, 182 Fed. Appx. 341 (5th Cir. 2006),

*United States v. Herrera*, 412 F.3d 577 (5th Cir. 2005), and *United States v. Grammas*,

376 F.3d 433 (5th Cir. 2004) is misplaced.  In all three cases, the defendants were

sentenced before the Supreme Court's decision in *Booker*, making the sentencing

guidelines advisory only and no longer mandatory.  Here, Ray was specifically warned

that the sentencing guidelines were not binding on this Court, that the actual sentence

imposed is solely in this Court's discretion, and that he could receive anywhere from the

10-year minimum-mandatory sentence to the maximum sentence of life imprisonment.

(Plea Agreement at ¶¶ 3–4; Rearraignment Tr. at 9–10.)  After giving this Court his

assurances that he understood what his punitive exposure was and that he understood he

would not be permitted to withdraw his guilty plea if his sentence was higher than he

expected, this Court accepted Ray's guilty plea.  (Rearraignment Tr. at 13–14.)

Moreover, in *Handy*, the prisoner submitted "affidavits" in support of his claim that his attorneys falsely promised him a certain sentence. *Handy*, 182 Fed. Appx. at 342. The only affidavit Ray has submitted is his own, containing his self-serving, after-the-fact contradictions of the testimony he gave this Court at his rearraignment. Ray has failed to produce any independent indica of reliability to support his allegations. And in *Grammas*, the record showed that the attorney had miscalculated his client's sentencing exposure. *See Grammas*, 376 F.3d at 437 (observing that attorney conceded he was unfamiliar with the guidelines and that he misinformed his client that he faced only 6-to-12 months if he was convicted when in actuality his client faced a 70-to-87 month range). Here, the record shows this Court cautioned Ray that (1) no one could predict his guideline range with; (2) no one could predict this Court's sentence with certainty; and (3) he faced punishment that included a mandatory-minimum of ten years in prison to a maximum of life. (Plea Agreement at ¶¶ 3–4, 9; Rearraignment Tr. at 9.) Thus, Ray fails to show his guilty plea was involuntary and unknowing.

### B.     Appeal

Ray alleges that "after the Court handed down its sentence, he assiduously and unequivocally informed and instructed [Pace] to perfect an appeal via filing said appeal." (Memo. at 19.) He claims Pace assured him he would appeal. (Aff. at ¶ 7.)

It is well settled that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). On the other hand, "a defendant who

explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Id.* Ray is the latter defendant. Pace explains in his declaration that immediately after Ray was sentenced, Ray "informed me that he wanted to appeal." (Appx. at 1.) But after further discussing the matter with Ray, including reviewing with Ray the appellate-rights waiver, Pace states Ray told him that "I should not file a notice of appeal." (*Id.* at 2.) Pace explains he discussed with Ray the potential for "a Rule 35 motion" and that "Ray indicated to me that he would rather proceed on the hopes of a future Rule 35 than a fruitless appeal." (*Id.*) Thus, Pace was not ineffective for failing to file a notice of appeal since Ray instructed him not to do so.[2]

---

[2] Because there are contested issues of fact regarding whether Ray instructed Pace to file an appeal, this Court may need to have a hearing to resolve the factual dispute. *See United States v. Jolly*, 252 Fed. Appx. 669, 670-71 (5th Cir. 2007) (cautioning that "contested fact issues ordinarily may not be decided on affidavits alone, unless the affidavits are supported by other evidence in the record").

**Response to Motion Under  28 U.S.C. § 2255 - Page 15**

## CONCLUSION

The government respectfully asks this Court to deny Ray's section 2255 motion.

Respectfully submitted,

SARAH R. SALDAÑA
UNITED STATES ATTORNEY

 s/ Frank L. Gatto
FRANK L. GATTO
Assistant United States Attorney
Texas Bar No. 24062396
801 Cherry Street, Suite 1700
Fort Worth, Texas 76102
Telephone: 817.252.5213
Facsimile: 817.252.5514
E-mail: Frank.Gatto@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on February 6, 2012, I electronically filed this response with the clerk

of court for the U.S. District Court, Northern District of Texas, using the electronic case

filing system of the court.  I also certify that a copy of this response was served on:

Kendrix T. Ray, Register No. 38541-177, FCI El Reno, P.O. Box 1500, El Reno, OK,

73036, by first class mail, return receipt requested No. 7010 1060 0001 7184 7447.

s/ Frank L. Gatto
FRANK L. GATTO
Assistant United States Attorney